Filed 9/19/23  Shi v. Thropay CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ZHAO HUI SHI et al.,<br><br>        Plaintiffs and Appellants,<br><br>    v.<br><br>JOHN P. THROPAY,<br><br>        Defendant and Respondent. | B317855<br><br>(Los Angeles County Super. Ct. No. BC662775) |

APPEAL from an order of the Superior Court of Los Angeles County, Richard Burdge, Jr., Judge.  Affirmed.

Law Offices of Steven P. Scandura and Steven P. Scandura for Plaintiffs and Appellants.

Davidovich Stein Law Group, Niv V. Davidovich and Elan N. Stone for Defendant and Respondent.

———————————————

Plaintiff and appellant Zhao Hui Shi, individually and on behalf of others similarly situated, appeals from an order denying class certification that was entered in favor of defendant and respondent John P. Thropay in this action arising out of an investment. The trial court found the claims were inconsistent with class treatment because they required an individualized assessment of each class member's reliance on different representations. On appeal, Shi contends: (1) reliance on the misrepresentations may be established by the victims' conduct rather than through testimony; (2) the trial court failed to properly weigh whether common questions of fact and law predominate; and (3) class treatment is the superior method to resolve the controversy. We find no abuse of discretion in the trial court's determination that common questions do not predominate, and therefore, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### Proton Therapy Investment Program

Thropay is an oncologist. He is the owner, president, and medical director of an oncology and imaging medical group with multiple outpatient clinics. In 2010, Thropay met Charles Liu, who was a salesperson for a proton therapy equipment manufacturer. Liu proposed funding construction of a proton oncology facility through the EB-5 immigrant investor visa program. The EB-5 program allowed prospective immigrants to apply to the United States Citizenship and Immigration Services (USCIS) for preferred immigration status based on an investment

2

of $500,000 in certain types of commercial enterprises through a designated regional center.

In November 2010, Charles Liu applied to the appropriate federal agency to designate Pacific Proton Therapy Center, LLC (the regional center), as a regional center. The application stated that Liu and Thropay were the managing principals of the regional center, and both would administer and manage the regional center to ensure that the project goals and regional center requirements were met. The regional center would organize a separate entity for each investment opportunity. The application also requested approval of the regional center's first project, Pacific Proton EB-5 Fund, LLC (the fund). Prospective immigrants would invest in the fund. The regional center would loan the invested money to Los Angeles County Proton Therapy, LLC (the proton therapy center), for development and construction of a proton therapy center. USCIS approved the application in 2012. The proton therapy center was later renamed Beverly Proton Center, LLC.

The operating agreement for the regional center stated that Thropay was the president, his sister Ruth Novodor was the secretary, and Liu was the treasurer. Liu owned 75 percent and Thropay owned 25 percent of the regional center.

A February 2011 memorandum of understanding stated Thropay would serve as the chairman and chief executive officer of the proton therapy center, Novodor would be the chief operating officer and secretary, and Liu would be the president with responsibility for investor relations.

A law firm created a private offering memorandum to market units of the fund to prospective immigrants. The memorandum stated Thropay was a member of the regional

3

center, an owner and chief executive officer of the proton therapy center, and the landlord for the proton therapy center  The memorandum explained that in these capacities, Thropay controlled the proton therapy center, the regional center, and the fund.  Thropay would lead the proton therapy center with a team of health professionals.

Liu and his wife Lisa Wang met with prospective immigrants and encouraged them to invest in the project.  Liu also hired several firms to market the investment to investors.  Thropay made five trips to China, speaking about proton therapy with representatives of the marketing companies and potential investors.  From October 2012 through April 2016, investments in the fund were sold for $500,000 each, raising a minimum of $26,967,918.

In 2012, Shi was approached about investing in the project by an acquaintance.  Lui gave a presentation to Shi explaining that her investment would secure a green card allowing immigration to the United States and earn money.  Liu showed her the memorandum, explained the first few pages, and answered several questions.  He did not give her a copy of the document.  Shi looked through the prospectus as best she could.  Shi paid more than $500,000 in March 2013, which she believed would be held in escrow and used to build the project.  She would not have invested in this project if she had known the managers of the project would not keep track of the finances and would take the money for their own use.

In 2015, Liu used funds received from investors to demolish a building on certain property owned by Thropay that was intended to be the location of the proton center.  Ultimately, Liu

and Wang diverted and dissipated nearly all of the $26,967,918 invested.

In August or September 2015, one of the companies marketing the fund alerted Thropay to concerns about the lack of progress on construction. Thropay hired an attorney and alerted the Securities and Exchange Commission (SEC) to a possible violation of federal securities laws. The SEC filed a civil action against Liu, Wang, the regional center, the fund, and the proton therapy center.

## Class Action

Shi and her husband Jun Lu filed the instant action on May 25, 2017. On August 27, 2020, they filed the operative fourth amended complaint, individually and on behalf of a class of similarly situated individuals, against several defendants, including Thropay. The complaint alleged that each defendant was a fraudulent transferee or transferor, alter ego, associate, partner, officer, director, conspirator, or was responsible, negligently, in some actionable manner for the events, either through their own conduct or through the conduct of their agents and employees. The causes of action alleged against Thropay were for fraud, negligent misrepresentation, and violation of Penal Code section 496, subdivision (c). The fraud cause of action alleged that the class members relied on representations in the memorandum and accompanying documents, as distributed by Liu and his agents. The class members relied on Thropay's representations of his involvement in the project and his credibility, as conveyed through the memorandum.

On September 20, 2021, Shi filed a motion to certify a class of 65 plaintiffs against Thropay. The motion provided 65 names of alleged investors who had paid approximately $500,000 each. Shi asserted that because most of the victims were in China, they had insurmountable obstacles to litigation in the absence of the class format. The substance of the EB-5 program, the underlying fraud by Liu, and the involvement of various attorneys in creating the investment presented common issues of fact and law. Common questions also included whether Thropay was vicariously liable for Novodor's conduct and whether Thropay owed a fiduciary duty to investors.

Thropay opposed the motion on the grounds that it was based on inadmissible evidence from the action filed by the SEC in federal court and Shi could not meet the elements for class certification. Shi filed a reply.

A hearing was held on the class certification motion on October 15, 2021. The trial court granted Shi's request for judicial notice of documents from the SEC action, but denied the class certification motion, finding that common questions of law and fact did not predominate for the proposed class, and that proceeding as a class was not superior to other methods. Shi filed a timely notice of appeal from the order denying certification of the class.[1]

---

[1] The notice of appeal also named Shi's husband Lu as an appellant, but Lu was not a party to the motion for class certification and has not filed a brief on appeal.

## DISCUSSION

### Class Certification Requirements and Standard of Review

Class actions are authorized "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court." (Code Civ. Proc., § 382.) To certify a class, "[t]he party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives." (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 (*Brinker*).) The community of interest factor in turn has three requirements: (1) common questions of fact or law that predominate over individual issues; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. (*Ibid.*)

The ultimate question in analyzing whether the predominance requirement has been met is whether " 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' " (*Brinker*, *supra*, 53 Cal.4th at p. 1021, quoting *Collins v. Rocha* (1972) 7 Cal.3d 232, 238.) To answer this question, a court must "examine the allegations of the complaint and supporting declarations [citation] and consider whether the legal and factual issues they present are such that their resolution in a single class proceeding would be both desirable and feasible." (*Brinker*, *supra*, at pp. 1021–1022.)

7

In addition to deciding whether common issues predominate, a court considering class certification must determine whether the remaining individual issues can be resolved "fairly and efficiently." (*Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1, 28–29 (*Duran*).)  That includes individual issues arising from affirmative defenses.  (*Id.* at p. 29.) "In considering whether a class action is a superior device for resolving a controversy, the manageability of individual issues is just as important as the existence of common questions uniting the proposed class."  (*Ibid.*)

Our review of the trial court's class certification ruling is "narrowly circumscribed."  (*Brinker, supra,* 53 Cal.4th at p. 1022.) We review the trial court's ruling for abuse of discretion.  " 'A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions.' "  (*Ibid.*) Because predominance is a factual issue, the trial court's finding that individual issues predominate must be affirmed if it is supported by substantial evidence.  (*Ibid.*) Under the substantial evidence standard, we must credit the trial court's reasonable inferences, even if a competing inference could be drawn.  (*Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 912–913.)

We review the trial court's ruling on the feasibility of managing individual issues at trial for abuse of discretion. (*Duran, supra,* 59 Cal.4th at pp. 49–50.)

## Predominance

Shi contends the trial court erred by finding common issues of fact and law do not predominate. Both parties' briefs focus more on the merits of their respective cases than an analysis of the class certification requirements, but the trial court carefully weighed the potential evidence and issues implicated by the complaint. We cannot say there is no substantial evidence to support the trial court's conclusion that individual issues predominate in this case.

"To establish a claim for fraudulent misrepresentation, the plaintiff must prove: '(1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff. [Citations.]' " (*Perlas v. GMAC Mortgage, LLC* (2010) 187 Cal.App.4th 429, 434, italics omitted.)

In general, " 'if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages.' " (*Brinker*, *supra*, 53 Cal.4th at p. 1022.) Class certification is generally not appropriate, however, when liability must be established through individualized proof. (See *Duran*, *supra*, 59 Cal.4th at p. 30 [" ' "Only in an extraordinary situation would a class action be justified where, subsequent to the class

9

judgment, the members would be required to individually prove not only damages but also liability" ' "]; see also *Hale v. Sharp Healthcare* (2014) 232 Cal.App.4th 50, 63–64 [class certification inappropriate where fact of damage, rather than amount of damages, is subject to individual proof].)

"[T]he class action procedural device may not be used to abridge a party's substantive rights." (*Duran*, *supra*, 59 Cal.4th at p. 34.) " 'Class actions are provided only as a means to enforce substantive law. Altering the substantive law to accommodate procedure would be to confuse the means with the ends—to sacrifice the goal for the going.' " (*Ibid.*)

In this case, there is substantial evidence to support the trial court's assessment that the claims for fraud and negligent misrepresentation would break down into mini-trials on individualized liability issues. The allegations of fraud and negligent misrepresentation in the complaint focused on representations made in the written memorandum, as well as the escrow agreement, and concealment of the truth about the project. Liu explained a few pages of the memorandum to Shi, who did not read English fluently at the time of the transaction, but he did not give her a copy of the document. The evidence showed Liu and the marketing companies also made statements at different times to potential investors.

Thropay is entitled to require each investor to prove reasonable reliance on a misrepresentation for which Thropay is liable. Although a trier of fact may conclude Thropay had no knowledge of any fraud as Thropay asserts or is liable for fraud from the inception of the project as Shi contends, a trier of fact may also find Thropay had no knowledge of fraud initially, but became liable for fraud at a certain point by continuing to make

10

representations about the project in light of the lack of progress. In other words, initial representations to investors may have been made in good faith, while later representations were made recklessly and without regard to the truth. Class treatment would require a mini-trial to prove individual issues such as: the representations that a particular class member relied upon; whether the representations were false when made; the class member's understanding of the investment, including any language barrier; whether the class member's reliance was reasonable under the circumstances; and whether Thropay is liable for the particular representations that the class member relied upon. The trial court concluded that the trial could not fairly be limited to common evidence of payment. Simply showing each class member paid $500,000 would not establish that each class member relied on a representation for which Thropay is liable, that the representation was false at the time it was made, or that the class member's reliance was reasonable under the circumstances. In light of the evidence, individualized testimony was necessary to determine the representations made to each investor and the extent that investor relied on the representations.

At the same time, many of the common issues of fact and law that Shi identified in her brief are, in fact, undisputed and subject to stipulation by the parties, or may be simplified for trial. For example, the mechanics of the EB-5 program are legal matters not in dispute that can be efficiently presented. Facts about Liu's conduct may have been established to an extent through the SEC proceedings, reducing the common issues of fact necessary for trial. Given that the trial court was presented with evidence of both common questions and individual issues, we

11

conclude the trial court's finding that individual issues would predominate in determining questions of misrepresentation and reasonable reliance is supported by substantial evidence.

Even were we to find, however, that common questions predominate as a matter of law in this case and there was no substantial evidence to support the trial court's conclusion otherwise, Shi did not show the trial court abused its discretion by concluding the remaining individual issues in the case could not be handled efficiently and manageably in a class setting. As one example of the challenges presented by class treatment in this case, the class members reside in China, requiring the services of translators and presenting additional communication concerns. The trial court was in the best position to assess whether the issues could be presented manageably in a class setting under the circumstances of this case and no abuse of discretion has been shown.

## DISPOSITION

The order is affirmed. Respondent John P. Thropay is awarded his costs on appeal.

NOT TO BE PUBLISHED.

MOOR, J.

We concur:

RUBIN, P. J.                    KIM, J.

12